IN UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MORTEZA EKRAMI,<br><br>Plaintiff,<br><br>v.<br><br>HNTB CORPORATION,<br><br>Defendant. | |

COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES Morteza Ekrami, represented by Jafri Law Firm, and brings this complaint against HNTB Corporation ("HNTB") for discrimination and wrongful termination on the basis of national origin, religion and age.

NATURE OF THE CLAIMS

1. This is an action for monetary damages to redress Defendant's unlawful discrimination and wrongful termination against Plaintiff on the basis of national origin, religious beliefs and age in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII") and the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 et seq. ("ADEA").

2. Plaintiff Morteza Ekrami is a 65-year-old Shiite Muslim male of Iranian origin.

3. Shiism is a minority sect of Islam predominantly based in Iran. Shiite Muslims have historically been oppressed on the basis of religious bigotry in Sunni majority countries. For example, in Pakistan, "life as a Shiite… is not easy. South Asia is home to an estimated 36-64

million Shiites-perhaps as many as 25 million in Pakistan alone. Accounts of Shiite life in Pakistan frequently portray a minority under siege by Sunni extremists."[1]

4. Shiism is not only under threat from Sunni extremist individuals, but also by Sunni extremist governments. Sunni governments have put Shiite groups under increased surveillance and limited their speech. For example, in Egypt, "courts... ruled in favour of closing down local Shia TV channels and websites… the ruling was welcomed by Egypt's Salafists who are known to hold hostile views of the Shia and perceive the presence of their media as attempts by Iran to spread Shiism in the Arab world's most populated country."[2]

5. This Sunni bigotry against Shiism and Shiites has carried over from one country to the next as Sunni individuals emigrate for their careers.

6. Plaintiff Ekrami was formerly employed by Defendant HNTB as an Office Engineer beginning on October 15, 2017 until his termination by Defendant HNTB on November 12, 2019.

7. During his employment with Defendant HNTB, Plaintiff Ekrami worked on a project for client New York City Department of Design and Construction (NYC-DDC).

8. Over the course of his employment, Plaintiff Ekrami experienced workplace discrimination from other employees on the basis of his religion and national origin, while said discriminatory behavior was protected by higher management.

9. Plaintiff Ekrami was specifically discriminated against by Egyptian national and Pakistani national Sunni Muslims employed with Defendant HNTB.

10. One of the aforementioned employees, Mr. Ashraf Toson, was younger and had lesser professional experience and lesser job title with Defendant HNTB than Plaintiff Ekrami, yet Mr.

---

[1] Foreign Policy, https://foreignpolicy.com/2020/01/07/iran-pakistan-shiism/
[2] Middle East Monitor, https://www.middleeastmonitor.com/20200313-egypt-has-securitised-shiism-but-salafism-arguably-poses-the-greater-threat/

Toson earned higher compensation than Plaintiff Ekrami despite the supervising client notifying HNTB management Mr. Muhammad Asif to be fair with wages.

11. Mr. Toson was under Plaintiff Ekrami's supervision as well as that of the Resident Engineer (RE) Mr. Samir Abdalla, as per NYC-DDC protocols. However, Mr. Toson would not follow Plaintiff Ekrami's instructions, would use vulgar language towards Plaintiff Ekrami and would arrive late to work and leave early without any disciplinary consequences from Defendant HNTB.

12. After observing Mr. Toson's disregard for NYC-DDC attendance protocols, the NYC-DDC Engineer in charge, Mr. Zong Jiang, asked Plaintiff Ekrami to supervise Mr. Toson's compliance with attendance protocols.

13. Plaintiff Ekrami sought disciplinary action against Mr. Toson, and in response Mr. Toson confronted Plaintiff Ekrami in his office while recording audio on his cell phone, saying to Plaintiff Ekrami "you are not my boss" while making a vulgar hand gesture towards him.

14. Plaintiff Ekrami told Mr. Toson to leave his office, and in response Mr. Toson pretended to be physically assaulted by Plaintiff Ekrami.

15. Mr. Toson shared this recorded audio with higher management, including Mr. Asif, as falsified evidence of physical assault against him by Plaintiff Ekrami. Mr. Asif advised Mr. Toson to report his falsified claim of assault to Mr. Peter Papas, Director of Construction Management Services.

16. On the basis of that recorded audio, Plaintiff Ekrami was fired from his employment with Defendant HNTB, even after disciplinary re-review by Defendant HNTB revealed that the recorded audio was falsified.

17. Plaintiff Ekrami, an Iranian national Shiite Muslim, was discriminated against by several Egyptian and Pakistani national Sunni Muslims employed by Defendant HNTB. One Egyptian national Sunni Muslim, Mr. Toson, was younger and far less experienced than Plaintiff Ekrami, yet earned more while performing poorly at his duties and refusing to follow instruction from Plaintiff Ekrami. Another Egyptian national Sunni Muslim, Mr. Abdalla, was a supervisor who accepted clearly falsified audio of a physical altercation that was recorded to falsely implicate Plaintiff Ekrami in physical assault and act as grounds for Plaintiff Ekrami's termination. A Pakistani national Sunni Muslim manager, Mr. Asif, also accepted this falsified audio to act as grounds for Plaintiff Ekrami's termination.

18. Defendant HNTB's discriminatory and tortious conduct in employing such individuals with such a pattern of harassment against Plaintiff Ekrami showed a knowing, reckless and/or willful and malicious disregard for Plaintiff's rights. Defendant's unlawful conduct has caused and continues to cause Plaintiff Ekrami to suffer economic and other damages.

## ADMINISTRATIVE PROCEDURES

19. Plaintiff has filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff received a Notice of Right to Sue on September 20, 2020. Plaintiff has timely filed his lawsuit pursuant to the Right to Sue letter he received from the EEOC.

20. Any and all other prerequisites to the filing of this suit have been met.

## JURISDICTION AND VENUE

21. The Court has jurisdiction over this action pursuant to 28 U.S.C. Section 1331 and 1343, as this action involves federal questions regarding the deprivation of Plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII") and the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 et seq. ("ADEA"). The court

has supplemental jurisdiction over Plaintiff's claims arising under state law pursuant to 28 U.S.C. Section 1367(a).

22. Venue is proper in this district pursuant to 28 U.S.C. 1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## PARTIES

23. Plaintiff Morteza Ekrami is a 65-year-old Shiite Muslim male of Iranian origin who was formerly employed by Defendant HNTB as an Office Engineer beginning on October 15, 2017 until his termination by Defendant HNTB on November 12, 2019.

24. Defendant HNTB is an engineering and architectural company that designs, builds and manages construction projects in a variety of fields relating including infrastructure for both the public and private sector.  Defendant contracts employees out to work for other entities, including NYC-DDC.  Defendant is incorporated in Delaware with headquarters in Kansas City, Missouri at 715 Kirk Drive, Kansas City, MO 64105.

## FACTUAL ALLEGATIONS

25. Plaintiff Ekrami was formerly employed by Defendant HNTB beginning on October 15, 2017 until his termination by Defendant on November 12, 2019.

26. Plaintiff Ekrami was contracted out by Defendant HNTB to the NYC-DDC as an Office Engineer (OE) with title grade ASCE (A-III) and NICET (N-IV).

27. Plaintiff Ekrami was originally going to work in a field office to a construction project, but on December 5, 2017 he was asked by manager Muhammad Asif to instead work as Senior Inspector on the construction site itself.

28. Mr. Asif asked Plaintiff Ekrami to relocate to the construction site because the Resident Engineer (RE), Fahad Usmani, wanted his younger and less experienced friend, Syed Zafar, to have Plaintiff Ekrami's position instead so that the two of them could work together.

29. Mr. Asif, Mr. Usmani and Mr. Zafar are all Pakistani national Sunni Muslims.

30. In exchange for working as Senior Inspector at the construction site, Mr. Asif promised Plaintiff Ekrami to adjust his wage rate to the originally requested amount by Plaintiff Ekrami, which Plaintiff Ekrami never fully received.

31. When actual construction work began on March 2018, Plaintiff Ekrami began working on the construction site as Senior Inspector while Mr. Zafar took his place at the field office as OE.

32. Two months after this arrangement began, NYC-DDC Engineer in Charge, Mr. Zong Jiang, discovered that Mr. Zafar was working as OE at the field office and was unqualified for the position.

33. On May 29, 2018, Plaintiff Ekrami was called by Mr. Jiang, who asked where Plaintiff Ekrami was, and when Plaintiff Ekrami said he was working on the construction site, Mr. Jiang got upset and state that Plaintiff Ekrami was hired to be OE at the field office and should not be at the construction site.

34. Plaintiff Ekrami returned to the field office by order of Mr. Jiang on May 30, 2018 and asked Mr. Zafar about his work as OE and whether Mr. Zafar was utilizing the NYC-DDC Project Management Information System (PMIS). Mr. Zafar became unpleasant when Plaintiff asked these questions, as Mr. Asif was unhappy with Mr. Jiang's instruction to send Plaintiff Ekrami back to the field office.  Mr. Asif then instructed Mr. Zafar to be uncooperative with Plaintiff Ekrami.

35. Plaintiff Ekrami returned to the construction site on May 31, 2018 but was confronted by Mr. Jiang, who warned "the next time I see you at the construction site instead of the field office, you will be removed from the project."

36. Plaintiff Ekrami returned to the field office the next day, June 1, 2018 but was denied access to documents, was denied the updated project email password, was not allowed to do any meaningful work, and felt increased hostility towards him from the Pakistani national Sunni Muslim employees, including Mr. Zafar.

37. Eventually in July 2018 Mr. Asif relocated Mr. Zafar to his Senior Inspector role and placed Plaintiff Ekrami back in his OE position. Mr. Zafar would later be removed from the project entirely by NYC-DDC.

38. After these events, Mr. Asif hired Ashraf Toson for the position of Senior Inspector with title grade ASCE (A-II) and NICET (N-III).

39. Mr. Toson is an Egyptian national Sunni Muslim.

40. Since the Resident Engineer Mr. Samir Abdalla was not familiar with NYC-DDC protocol, Mr. Toson was put under the supervision of Plaintiff Ekrami.  But, Mr. Toson was not cooperative with Plaintiff Ekrami. Mr. Toson would not follow NYC-DDC protocol, would frequently arrive late, submit incomplete daily inspection reports, and was rude towards Plaintiff Ekrami.

41. After Mr. Toson's conduct was noticed by NYC-DDC, Plaintiff Ekrami was asked by NYC-DDC Engineer in Charge, Mr. Zong Jiang, to verify that all staff members comply with NYC-DDC protocols. However, Plaintiff Ekrami found that Mr. Toson's behavior was tolerated.

42. Over the following year, Plaintiff Ekrami also experienced hostility from the supervising Resident Engineer, Mr. Abdalla.

43. Mr. Abdalla is an Egyptian national Sunni Muslim, the same national origin and religious sect as Mr. Toson.

44. Mr. Abdalla would tolerate Mr. Toson's rude behavior towards Plaintiff Ekrami, would overlook or make excuses for Mr. Toson's poor performance, and would privately converse with Mr. Toson in Arabic in front of Plaintiff Ekrami, in an attempt to prevent Plaintiff Ekrami from understanding their conversation. Mr. Abdalla would also prioritize his private engineering design business over his duties as Resident Engineer.

45. Plaintiff Ekrami attempted to obtain approval from NYC-DC to switch his workplace but was told that if he left this project, that NYC-DDC would not approve any other employment for him.

46. On October 15, 2019, Plaintiff Ekrami complained to Tim Hurley, a senior project manager employed by Defendant HNTB, about Mr. Abdalla and Mr. Toson's workplace conduct.

47. In response, Mr. Hurley confronted Mr. Abdalla and Mr. Toson regarding Plaintiff Ekrami's complaint. Mr. Hurley warned that the client NYC-DDC was upset with their workplace conduct which could jeopardize HNTB's contract.

48. Plaintiff Ekrami also asked Mr. Hurley to place Plaintiff on a different project due to the intolerable work environment, but Mr. Hurley responded, "we cannot replace you, as you are supposed to be the last person to leave the job as Office Manager."

49. During this disciplinary meeting with Mr. Hurley, Mr. Toson rudely referred to Plaintiff Ekrami, saying "look who reported to DDC," to which Mr. Hurley answered, "the DDC has eyes and they see everything."

50. Mr. Toson, still angry, referred to Plaintiff Ekrami, saying, "Morteza keeps track of my timing and reports it to DDC."

51. Plaintiff Ekrami responded that Mr. Jiang knew exactly what was going on in the project and did not need any reporting to know that Mr. Toson was performing poorly on the job.

52. The next month on November 6, 2019, Plaintiff Ekrami saw Mr. Toson visit the field office in violation of NYC-DDC protocol, go to Mr. Abdalla's office, and abusively speak about Plaintiff Ekrami in Arabic.

53. Mr. Abdalla then went to Plaintiff Ekrami's office and said that he would be visiting the construction site.

54. After Mr. Abdalla left, Mr. Toson confronted Plaintiff Ekrami in his office while secretly recording audio on his phone with the intent of recording a predesigned scenario.

55. Mr. Toson said to Plaintiff Ekrami, "you are not my boss" while making a vulgar hand gesture towards Plaintiff.

56. Plaintiff Ekrami told Mr. Toson to leave his office, and in response Mr. Toson pretended to be physically assaulted by Plaintiff Ekrami, making noises to mimic an assault and recording it on his phone.

57. Mr. Toson used this audio to falsely accuse Plaintiff Ekrami of physical assault, alleging that Plaintiff Ekrami punched Mr. Toson in the arm and kicked him in the back as Mr. Toson was exiting Plaintiff Ekrami's office.

58. Plaintiff Ekrami is 65 years old and unable to even raise his leg to kick Mr. Toson in the back.

59. Mr. Toson is a younger and healthier man than Plaintiff Ekrami, which would make it foolish and unlikely for Plaintiff to initiate any physical altercation with Mr. Toson.

60. Mr. Toson alleged to Defendant HNTB that he had reported this alleged assault to the police, but no such police involvement or report was ever made.

61. Plaintiff Ekrami received a message from Mr. Hurley to leave the field office immediately, and Plaintiff Ekrami complied.

62. After Plaintiff Ekrami left the field office he went to the nearby police station at 830 4th Avenue, Brooklyn, NY 11232 to seek help from police regarding Mr. Toson's predesigned scenario.

63. Plaintiff Ekrami was told by police that, "there is no report of incident against you," and therefore that Plaintiff Ekrami would have to wait for such a report of incident in order to defend himself from Mr. Toson's claim.

64. However, there was never any such report filed with the police, and instead Defendant HNTB bypassed police investigation to falsely tell NYC-DDC that Plaintiff Ekrami instigated a physical conflict with Mr. Toson, which facilitated Plaintiff Ekrami's removal in order to give Plaintiff's OE position to a younger Pakistani national friend of Mr. Asif with no relevant experience.

65. On November 7, 2019, Plaintiff Ekrami got a call from the regional Human Resources director for Defendant HTNB Mahfuza Chowdhury.

66. Plaintiff Ekrami explained to Ms. Chowdhury that Mr. Toson had fabricated the audio recording of a physical altercation.

67. Ms. Chowdhury acknowledged that Mr. Toson did not have a valid claim against Plaintiff Ekrami but stated that it was still Defendant HNTB's decision to terminate Plaintiff Ekrami's employment, based on Plaintiff Ekrami's alleged lack of technical information.

68. Plaintiff Ekrami opposed this characterization, asserting his 33 years of engineering work experience, but to no avail.

69. Plaintiff Ekrami followed up with the Senior Vice President of the HNTB New York office, Stephen Dilts, asserting Plaintiff's history of exceptional work product and that this unfair treatment by fellow employees would create an environment that would deter such work product by others in the future.

70. However, Plaintiff Ekrami never settled this matter with HNTB despite his good faith attempts, because Defendant HNTB claimed that its termination of Plaintiff Ekrami was a justifiable business decision, and Plaintiff Ekrami instead had to file an EEOC complaint against Defendant HNTB.

71. Defendant HNTB alleged in their response to Plaintiff Ekrami's complaint that Mr. Abdalla was a witness of the alleged physical confrontation between Plaintiff and Mr. Toson, but this was false, because Mr. Abdalla had left for the construction site. Mr. Abdalla's exit and re-entry can be verified by building security cameras.

72. Further, Defendant HNTB in their rebuttal falsely accused Plaintiff Ekrami of being unqualified and making errors that added to the duration and cost of the project, when those errors were outside the scope of Plaintiff Ekrami's duties but rather were the responsibility of managers like Mr. Asif.

73. Mr. Abdalla was later terminated as a result of Plaintiff Ekrami's EEOC complaint, suggesting that Defendant HNTB acknowledges the workplace misconduct by Mr. Abdalla, yet they will not acknowledge HNTB's mistreatment of Plaintiff Ekrami.

74. Defendant, and its employees, harassed and abused Plaintiff by their workplace discrimination on the basis of Plaintiff's national origin, religion and age, including forcing Plaintiff off assignment in order to keep intact their national and religious clique, thus putting Plaintiff in disciplinary jeopardy, as well as allowing an environment where this national and

religious clique could regularly harass Plaintiff on the job and speak negatively about him in earshot while speaking in a foreign language, underpaying Plaintiff despite his professional credentials while allowing younger employees with lesser experience and poor work performance to be paid more, and even falsely accusing Plaintiff of physical assault with falsified audio recording evidence in order to bring about Plaintiff's termination and upholding this termination even while acknowledging the falsification of the aforementioned audio recording evidence.

75. As a result of Defendant's actions, Plaintiff has suffered monetary and/or economic damages, including, but not limited to, the loss of past and future income, compensation and other benefits.

76. As a result of Defendant's actions, Plaintiff has suffered mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

77. Defendant's discriminatory actions were intentional, done with malice and/or showed a deliberate, willful, wanton and reckless indifference to Plaintiff's civil rights.

FIRST CAUSE OF ACTION

(Discrimination and Harassment in Violation of the Civil Rights Act)

78. Plaintiff hereby repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

79. Title VII of the Civil Rights Act states that "it shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).

80. By the actions described above, among others, Defendant has discriminated against Plaintiff on the basis of his religion and national origin by denying him the same terms and conditions of employment available to employees who are non-Iranian and non-Shiite Muslim, including, but not limited to, subjecting them to disparate working conditions and denying them terms and conditions of employment equal to that of employees who are non-Iranian and non-Shiite Muslim.

81. As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of Title VII of the Civil Rights Act, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, including, but not limited to, loss of future income, compensation and benefits for which they are entitled to an award of damages.

82. As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of Title VII of the Civil Rights Act, Plaintiff has suffered, and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

83. Defendant's unlawful and discriminatory actions constitute willful violations of Title VII of the Civil Rights Act for which Plaintiff is entitled to an award of punitive damages.

### SECOND CAUSE OF ACTION

(Discrimination and Harassment in Violation of the Age Discrimination in Employment Act)

84. Plaintiff hereby repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

85. The Age Discrimination in Employment Act states "it shall be unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any

individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

86. Defendant HNTB violated Plaintiff Ekrami's civil rights pursuant to 29 U.S.C. § 623(a)(1) when they allowed Mr. Toson, a younger employee with lesser professional experience and poor work performance, to receive more compensation than Plaintiff, when Plaintiff was not only better qualified and in a position of more responsibility than Mr. Toson but was also in a supervisory role over Mr. Toson, and disregarded Plaintiff's complaints as to his own insufficient compensation.

87. By the actions described above, among others, Defendant has discriminated against Plaintiff on the basis of his age by denying him the same terms and conditions of employment available to employees who are younger, including, but not limited to, subjecting him to disparate working conditions and denying him terms and conditions of employment equal to that of employees who are younger.

88. As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the Age Discrimination in Employment Act, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, including, but not limited to, loss of future income, compensation and benefits for which they are entitled to an award of damages.

89. As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the Age Discrimination in Employment Act, Plaintiff has suffered, and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

90. Defendant's unlawful and discriminatory actions constitute willful violations of the Age Discrimination in Employment Act for which Plaintiff is entitled to an award of punitive damages.

## THIRD CAUSE OF ACTION

(Discrimination and Harassment in Violation of the NYSHRL)

91. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

92. Defendant has discriminated against Plaintiff on the basis of his age, national origin and religion in violation of the NYSHRL by denying the respective classes the same terms and conditions of employment available to employees who are younger or of a different religion and/or national origin, including, but not limited to, subjecting them to disparate working conditions and compensation, and ultimately terminating them for unlawful purposes.

93. As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation the NYSHRL, Plaintiff has suffered and continues to suffer monetary and/or economic harm for which he is entitled to an award of damages.

94. As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continue to suffer, emotional distress for which he is entitled to an award of compensatory damages.

95. Defendant's unlawful and discriminatory actions were intentional, done with malice and/or showed a deliberate, willful, wanton and reckless indifference to Plaintiff's rights under the NYSHRL, for which Plaintiff is entitled to an award of punitive damages.

## FOURTH CAUSE OF ACTION

(Discrimination and Harassment in Violation of the NYCHRL)

96. Plaintiff hereby repeats and re-allegse each and every allegation in all of the preceding paragraphs as if fully set forth herein.

97. Defendant has discriminated against Plaintiff on the basis of his religion, national origin, and age in violation of the NYCHRL by denying him the same terms and conditions of employment available to employees who are younger, of a different national origin and/or religion, including, but not limited to, subjecting them to disparate working conditions and compensation.

98. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, including, but not limited to, loss of future income, compensation and benefits for which he is entitled to an award of damages.

99. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, emotional distress for which he is entitled to an award of damages.

100. Defendant's unlawful and discriminatory actions constitute malicious, willful and wanton violations of the NYCHRL, for which Plaintiff is entitled to an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in his favor and against Defendant, containing the following relief:

A. A declaratory judgment that the actions, conduct and practices of Defendant complained of herein violate the laws of the United States and the state of New York;

B. An injunction and order permanently restraining Defendant from engaging in or tolerating such unlawful conduct from its employees;

C. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including but not limited to, the loss of past and future income, wages, compensation, seniority and other benefits of employment;

D. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including but not limited to, compensation for his humiliation, embarrassment, loss of self-esteem and self-confidence, and emotional pain and suffering.

E. An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus pre-judgment interest;

F. An award of punitive damages;

G. An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorney's fees to the fullest extent permitted by law; and

H. Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Respectfully submitted,

JAFRI LAW FIRM

Dated: December 11, 2020                                By: /s/ Farva Jafri

Farva Jafri
50 Evergreen Row
Armonk, NY 10504
farva@jafrilawfirm.com
t: (800)593-7491
f: (224)228-6721
*Counsel for Plaintiff*